**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CASE NOS. PJM 13-0327** |
| | ) | **& CBD 13-0148** |
| **RACHEL ONDRIK** | ) | |
| | ) | |
| **&** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CASE NOS. PJM 13-0328** |
| | ) | **& CBD 13-0149** |
| **KIRK YAMATANI** | ) | |

**UNITED STATES OF AMERICA'S CONSOLIDATED**
**RESPONSE TO DEFENDANTS' MEMORANDA OF LAW**

The United States of America, by and through its undersigned counsel, hereby responds to

the defendants' memoranda of law in support of the appeals of their respective sentences imposed

by Magistrate Judge Charles B. Day on June 19, 2013.   On July 26, 2013, the government filed

motions to dismiss the appeals in both cases based on waivers of appeal that both defendants

agreed to as part of their plea agreements.   In those motions, the United States addressed several

of the defendants' respective arguments.   The Court has deferred deciding the United States'

motion to dismiss until after it hears argument on the substantive issues the defendants raise on

appeal.   Because the defendants raise similar substantive issues regarding Judge Day's sentence,

the government submits this consolidated response.   To the extent, however, that the motions to

dismiss already addressed other issues raised by the defendants, the government requests that

those earlier motions be considered incorporated into the consolidated response, and the

government will rely on those submissions as well as this response during the hearing on this

1

matter, currently scheduled for August 4 at 3:00 pm.   For the reasons stated before, the

government maintains that this Court should decline to entertain the defendants' appeals because

they knowingly and voluntarily waived their rights to appeal their 8-month sentences as part of

their agreements with the government.   Should the Court choose to reach the merits of their

substantive qualms with Judge Day's sentences, this Court should deny their appeal because Judge

Day did not plainly err in fashioning an appropriate sentence under 18 U.S.C. § 3553, despite

arriving at a guideline sentence higher than what both parties expected and argued for.   Finally,

should the Court remand the cases for resentencing, it should remand back to Judge Day rather

than reassign the matter to another judge in the district.

## FACTUAL BACKGROUND

The factual background laid out in the government's previous submissions covers the

issues of whether the defendants knowingly and voluntarily waived their rights to appeal the

sentence of imprisonment imposed in each case.   The government suggests that the Court review

each defendant's sentencing transcript in full as both are relatively short and reviewing each

sentencing hearing in its entirety will allow this Court to consider how the sentencing judge

touched on the factors listed under 18 U.S.C. § 3553(a) throughout his colloquy with the attorneys

and the defendants.

The only area the government feels needs additional supplementation regards the

statements the government submitted to the sentencing court from Department of Commerce

Inspector General Todd Zinser and his Deputy, Richard Beitel.   Because the Crime Victim's

Rights Act, at 18 U.S.C. § 3771(d)(1) provides that rights under the Act may be enforced by the

victim's lawful representative, the undersigned assessed that the Inspector General was a

representative of the victim agency.   Though I received the letters from the Office of the Inspector General in a timely fashion, through personal oversight, I failed to submit these to the assigned probation officer for inclusion in the pre-sentence report before I departed in late May for annual military training.   After seeing notice that the defendants had submitted their sentencing memos on ECF, when I returned from leave I submitted the letters to the sentencing court in each defendant's case as a victim impact statement, though I filed each under seal with the express acknowledgement that the victim impact statements contained additional allegations of misconduct to which neither defendant had admitted.

When counsel for both Yamatani and Ondrik contacted me and asked me to retract the letters, I informed them that my understanding of the Crime Victim's Rights Act was that the government did not have discretion to suppress victim statements, and indeed was under an obligation to provide these to the sentencing court when submitted by victims or their legal representatives.   Both the Greenbelt Branch Chief and this U.S. Attorney's Office Criminal Chief agreed that my interpretation of the rule was correct.   When Mr. Yamatani's attorney provided authority from the Ninth Circuit suggesting that the U.S. Attorney's Office had some responsibility to temper victim statements when approaching sentencing after a negotiated plea, however, I contacted my office's Victim & Witness Coordinator for his additional expertise on this topic.

The Coordinator agreed that victim statements should not be suppressed regardless of the outcome; however, he related that training the Department of Justice provided to all U.S. Attorney's Offices Victim Coordinators was that government agencies should not be considered victims under the Act.   This interpretation comported with a plain language reading of the Crime

Victim's Rights Act, at 18 U.S.C. § 3771(e), which can be read to define a "victim" only to include natural persons. After realizing there was some leeway on this, I agreed to move to withdraw the letters, and filed that motion in both cases on June 18, 2013, the day after I had filed the letters (ECF No. 10 in both cases). Judge Day granted the motion to withdraw the same day for Ms. Ondrik (ECF No. 14) and never formally acted on the motion in Mr. Yamatani's case.

After Judge Day imposed sentence on Mr. Yamatani, Ms. Ondrik's attorney asked Judge Day early in her sentencing hearing whether he had reviewed the letters. Ondrik Sent. Tr. at 5. Judge Day responded that he had, but that he had "deliberately divorced my knowledge of that as best" he could. *Id.* Judge Day continued to state that he was "not using anything in those reports for the Government's purpose, whatever purpose that may be.   I just view it as a misfiled, shouldn't have been filed, or for whatever reason the Government elected not to file or to pursue whatever is set forth therein….I feel very comfortable…I am not using [the letters] for any purpose."   Ondrik Sent. Tr. at 6.

Neither defendant filed any post-sentence motion for reconsideration or correction of sentence under Rule 35.[1]  Instead, both immediately noted their appeal and asked for review of Judge Day's decision to remand them immediately to the U.S. Marshal's custody.

## STANDARD OF REVIEW

When reviewing the district court's application of the Sentencing Guidelines, this Court reviews findings of fact for clear error and questions of law *de novo*.   *United States v. Llamas*, 599 F.3d 381, 387 (4th Cir. 2010). Where a defendant has preserved a claim of procedural error for appellate review, this Court will consider whether any such error was harmless. *See United States*

---

[1] The one motion in this vein that was filed was a motion to vacate sentence filed by Yamatani on the grounds that the sentencing court failed to advise him of his right to appeal. ECF No. 16. Yamatani filed this motion on June 20, 2013 – one day after he had already filed his notice of appeal to this Court.

*v. Savillon-Matute*, 636 F.3d 119, 123-24 (4th Cir. 2011) (noting that "procedural errors at

sentencing ... are routinely subject to harmlessness review") (quoting *Puckett v. United States*, 556

U.S. 129, 129 S. Ct. 1423, 1432 (2009) (internal quotation marks omitted).   Where a defendant

has failed to properly preserve a claim of error below, however, an appellate court will only review

for plain error, and reverse only if the claimed error was obvious, affected substantial rights, and

seriously undermined the fairness, reputation, and integrity of the judicial proceedings.   *See*

*United States v. Olano*, 507 U.S. 725, 732 (1993).

This Court should review claims of substantive error in the sentence for reasonableness.

"[A]fter calculating the correct Guidelines range, if the district court determines that a sentence

outside that range is appropriate, it may base its sentence on the Guidelines departure provisions or

on other factors so long as it provides adequate justification for the deviation.   When reviewing

the sentence selected by the district court, regardless of whether the court deviates from the

advisory Guidelines range because of a Guidelines-sanctioned departure, or because of one or

more § 3553(a) factors, or because of some other reason – that is, no matter what provides the basis

for a deviation from the Guidelines range – we review the resulting sentence only for

reasonableness."   *United States v. Evans*, 526 F.3d 155, 164-65, *citing Gall v. United States*, 552

U.S. 38, 50 (2007).

## ARGUMENT

**I.    The Sentencing Court's Procedural Error Does Not Rise to Plain Error, and Was
Ultimately Harmless.**

The defendants argue in their memoranda that the sentencing court committed procedural

error in at least four ways: by failing to calculate the guidelines, by failing to consider the 3553(a)

factors, by failing to adequately explain its chosen sentence, and by relying on inaccurate

information submitted by their former agency's chiefs.[2]   The government will note that none of these arguments were made by either defendant at sentencing or, for instance, in a denied motion for reconsideration to the sentencing court; thus, these claims should only be reviewed for plain error. Under that standard, this court should not disturb the sentencing court's judgment unless there was a plain error which affected substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings.   *United States v. Olano*, 507 U.S. 725, 732 (1993).

Specifically, Yamatani contends that the court failed to calculate the Guidelines before imposing sentence.   Like the other claims, this was unpreserved by either defendant at sentencing; moreover, it is simply untrue.   Because there was no dispute between either party as to the content of the presentence report, *see e.g.,* Yamatani Sent. Tr. at 4, which report adopted the plea agreement's stipulate offense level of 10 in both cases, the sentencing court merely implicitly adopted the recommended level and moved on to hear from defense counsel on its sentencing allocution. Under Fed. R. Crim. P. 32(i)(3)(A), the sentencing court "may accept any undisputed portion of the presentence report as a finding of fact."   Further, the Statement of Reasons filed by the Sentencing Court in both cases plainly shows the sentencing court used the agreed offense level of 10. (ECF No. 19 in Ondrik, ECF No. 21 in Yamatani). There was no error in this regard, much less plain error.

Next, Yamatani contends that the sentencing court committed procedural error by failing to explain its sentence or fully articulate the 3553(a) factors.   Again, this allegation of error was not made during the sentencing hearings nor in any post-sentence motion by either defendant to the

---

[2] Defendant Ondrik raises similar claims to Yamatani – albeit tending to complain more of the substance of Judge Day's rationale rather than procedural error.   She, however, attempts to fashion these claims of error as being of Constitutional dimension – presumably to evade the appeal waiver – but proposes no standard by which this Court should review them.

sentencing court; thus it should be reviewed only for plain error.   Specifically, Yamatani contends

that Judge Day failed to apply the statutory factors under 18 U.S.C. § 3553(a) in arriving at his

sentence.   First, it is clear from the record that Judge Day discussed most of the § 3553(a) factors

at sentencing for both defendants.   The sentencing court discussed at length the nature and

circumstances of Yamatani's offense and the defendant's characteristics and history as a law

enforcement officer.   Yamatani Sent. Tr. at 15-17.   In Ms. Ondrik's hearing, Judge Day made

clear that he found Ms. Ondrik's circumstance indistinguishable from Yamatani's. Ondrik Sent.Tr.

at 15-16.   The sentencing court also was clearly concerned about avoiding disparate treatment for

the defendants – who obtained approximately $14,000 from the government by fraud – versus

those who steal in less sophisticated ways; essentially the sentencing court was discussing the need

for the sentence imposed to reflect the seriousness of the offense, to provide just punishment, and

the need to avoid disparities.   The sentencing court discussed – and rejected – the government's

argument for probation as a means of improving chances for restitution payments to be collected.

Yamatani Sent. Tr. at 17.   It also considered the appropriateness of other types of sentences

available – significantly, "straight" probation and probation with a home detention element – and

decided those were inappropriate in these cases.   *Id*. at 17-18; Ondrik Sent. Tr. at 18-19.

The government concedes that Judge Day did not expressly address the considerations

listed at § 3553(a)(2)(B)-(D); however, those that he omitted discussion of were not especially

salient in this case and this error should be considered harmless, much less plain. The Fourth

Circuit has held that a sentencing court's failure to fully articulate each and every § 3553(a) factor

may still be harmless if the error "did not have a substantial and injurious effect or influence on

the" result and "we can [ ] say with ... 'fair assurance,' ... that the district court's explicit

consideration of [the defendant's] arguments would not have affected the sentence imposed."

*United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010) (*quoting Kotteakos v. United States*, 328

U.S. 750, 765 (1946) (internal quotation marks omitted)).   The need to personally deter the

defendant from committing similar conduct in the future was not especially pressing given that he

had already resigned from government service and would be unlikely to obtain new employment

with the government; thus his chance to commit similar conduct in the future seems minimal.

Additionally, Yamatani already had a graduate degree and the presentence report showed him in

good health; thus, there was little need to discuss the impact of educational or medical programs as

impacting any sentencing decision.   And while the court did not expressly discuss general

deterrence, it is implicit in its discussion that its perceived need to deter "white collar" criminals

with penalties akin to those meted out to unsophisticated criminals was paramount in its decision

to impose a guideline sentence of imprisonment above that recommended by the government and

the Probation Office.   Again, while there was error here, it was not preserved and does not merit

reversal under a plain error standard of review.   Further, even were this Court to choose to review

it for harmlessness, it should assess that there was no "but for" issue here in that the sentencing

court would have imposed a different sentence if not for the error – thus it should find the error

harmless.

**II.      The Sentencing Court's Sentences were Substantively Reasonable.**

Although above the range recommended by the government, the sentencing court's

sentence was still substantively reasonable as the sentence of imprisonment imposed – the only

aspect of the sentence the defendants now challenge – was still below the mid-point of the

recommended guideline range of 6-12 months imprisonment.   "If the sentence is within the

Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness." *Gall v. United States*, 552 U.S. 38, 51 (2007).   In both defendants' sentencing hearings, the sentencing judge discussed at length why he disagreed with the recommendation of the government that probation with a six-month period of home detention was sufficient but not greater than necessary to achieve the goals of sentencing articulated at 18 U.S.C. § 3553(a). Although the sentencing court imposed a more punitive sentence of imprisonment than that contemplated by the parties or even recommended by the government at sentencing and in the plea agreement, the government must defend the sentencing court's application of its discretion to impose a lawful sentence so long as it did not commit reversible error in arriving at that sentence, as is the case here.   *See United States v. Colon*, 220 F.3d 48, 51-53 (2d Cir. 2000).

This is true notwithstanding both defendants' complaints that Judge Day's sentence was tinged by the letters from Inspector General Zinser and Deputy Inspector General Beitel, which is the final area in which both defendants allege procedural error.   I address the issue here because considering such information cannot constitute procedural error, as 18 U.S.C. § 3661 plainly states that "[n]o limitation shall be placed on information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."   Although case law supports the proposition that a person may only be sentenced based on accurate information, *see, e.g., United States v. Lee*, 540 F.2d 1205 (4th Cir. 1976), the letter writers did not attempt to hide their bias against the defendants, and freely admitted that each accused both defendants of making false accusations against them personally.   Additionally, to the extent that Zinser made accusations regarding the defendants' motives for their conduct, he couched them as his own assessment: e.g.,

"It is my view…"   These letters were not presented as unbiased facts; they were presented as statements made by those who considered themselves as victims of the defendants' actions who essentially acknowledged they had an axe to grind.

More important than argument over the factual accuracy or inaccuracy of what the letters contained, however, is that there is no support in the record that, in articulating his rationale for the sentences imposed, Judge Day relied on any information in either letter to the extent that it went beyond what was in the plea agreements' statement of facts.   First and foremost, Judge Day stated on the record during Ms. Ondrik's sentencing that he was not relying on the letters in any way. Second, it is clear from reading Judge Day's comments in both sentencing proceedings that he did not raise at all the issues Zinser and Beitel brought up in their letters that were outside the agreed statement of facts.   Thus, there is no record support at all for this allegation of error.

## III.      If Remanded, the Case Should Not be Reassigned to a Different Judge

Both defendants request that this Court reassign this case to a different magistrate judge for resentencing should the Court find reversible error.   This request is unsupported by the governing case law and, frankly, it appears to be a bald attempt at forum shopping.   Indeed, since both seem to fully expect Judge Day to impose the same sentence on remand, and his sentence cannot be said to have been the result of bias or manifest injustice that would require reassignment to a new judge, these requests can also be read as a tacit admission that the procedural errors of which they complain are harmless.

The Fourth Circuit case law does not support the defendants' stated rationale for requesting reassignment.   While *United States v. Guglielmi*, 929 F.2d 1001, 1007 (4th Cir. 1991), did adopt the factors the defendants cite in determining whether to reassign a case on remand, i.e.,

"(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness," and that particular decision did involve reassigning its case to a new sentencing judge, that situation was orders of magnitude different than what is presented here.

In *Guglielmi*, Judge Murnaghan, writing for the court, signaled in his opening paragraph that it was an exceptional case, where the Circuit was "[f]or a third time…called upon to review the imposition of an extremely substantial sentence flowing from a conviction on multiple counts of obscenity crimes" that predated the Sentencing Guidelines.   929 F.2d at 1001.   Indeed, the district court there had imposed a 25 year sentence on Guglielmi for crimes relating to transporting pornography across state lines, a sentence that required the district court to run the appellant's sentences consecutively to achieve. *Id*.   In contrast, the Sentencing Guidelines, which were promulgated after shortly after Guglielmi's original sentencing, would have counseled a sentence of just 8-14 months for Guglielmi.   *Id*. at 1009.

After Guglielmi filed a motion to correct or reduce his sentence under Rule 35, the district court denied his motion without a hearing or even awaiting the government's response. *Id*. at 1001. Further, after two successful appeals in which the Circuit Court remanded the judgment to the district court and expressed concern with the district court's rationale linking the viewing of pornography with sexual violence resulted in no change of sentence, it finally reassigned the case to a different sentencing judge in the decision Judge Murnaghan authored.   Judge Murnaghan,

11

however, plainly expressed concern that their "review necessitate[d] a most careful examination of the limitations the law places upon a federal appellate court's power to check the wide discretion accorded to federal district courts in matters of sentencing."   Judge Wilkinson, concurring in the judgment, also cautioned that "[s]etting aside a sentence imposed by a conscientious district judge should be a rare thing." *Id*. at 1009.   But, he continued, "the wrong done an individual by purely idiosyncratic punishment may be so apparent as to constitute one of those rare instances where recourse may be had to an appellate court." *Id*.

The instant cases are not *Guglielmi*, nor are they anywhere close.   There have been no multiple remands where the sentencing court persisted in its error.   No illegal sentences of imprisonment have been imposed, nor, frankly, were even above-guideline sentences of imprisonment imposed.   Judge Day is not accused of harboring any religious, ethnic, or racial bias against the defendants.   He certainly expressed a strong view about the nature and circumstances of the defendants' offenses, particularly when taken in context of the defendants' sworn duty to police the very type of violations they committed against their own agency.   He was also plainly troubled that they had obstructed justice by persisting in those claims – but this was a guideline enhancement to which both defendants had agreed.   In his factual finding, he cited the total amounts of tainted claims the defendants made following their household moves – much of which were denied or clawed back by the government – rather than only on the agreed actual loss amounts the government sustained, but those facts were also stipulated to in the plea agreement. What he did not do was not engage in the type of idiosyncratic behavior that troubled the panel in *Guglielmi* and prompted the Fourth Circuit in frustration to reassign the case on the third remand.

Indeed, compared with cases in which the Fourth Circuit has declined to reassign cases on

remand, such as *United States v. Cameron*, 340 Fed.Appx. 872 (4th Cir. 2009) (defendant appealed from upward variant 12-year sentence the district court imposed without giving advance notice to either party and where the Fourth Circuit found court failed to adequately explain the variance), versus those in which it has, such as *United States v. Strickland*, 2010 WL 235080 (4th Cir. Jan. 21, 2010) (former deputy sheriff convicted of money laundering sentenced to 84-month upward variant sentence when Guidelines counseled 24-30 months imprisonment), Judge Day's guideline sentences of 8 months imprisonment in these cases – slightly below the mid-point of the Guideline range – were extremely modest and can hardly be placed in the same category.

At bottom, the only reason for this appeal is that the defendants received harsher sentences than they expected, even though the agreed Guideline calculations contemplated such sentences. They now opportunistically claim error on issues they neither raised nor preserved below and ask for resentencing before a new judge in hopes that someone else will be more lenient.   Regardless of whether this Court agrees that the sentencing court was harsher than necessary in its sentencing decision, reversing it would set a poor precedent that reasonable exercises of judicial discretion in determining the sentence in a given case may be second-guessed for little reason beyond a defendant's unhappiness with an unexpected outcome.

**<u>CONCLUSION</u>**

For the reasons stated earlier, the United States of America respectfully requests that this Court dismiss the instant appeal based on the waivers of appeal to which both defendants agreed in their plea agreements.   Should the Court reach the merits, it should find the sentencing court's errors, if any, were neither plain nor harmless and should affirm its judgment.   And, finally, should the Court find reversible error, it should deny the defendant's request to reassign the case to another judge.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney


By:___//signed//_____
Adam K. Ake
Assistant United States Attorney
6500 Cherrywood Lane
Greenbelt, Maryland   20770

14

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 28th day of August, 2013, a copy of the foregoing Government's Consolidated Response to Defendants' Memoranda of Law was electronically filed and delivered via ECF to:

Leslie McAdoo Gordon
McAdoo Gordon & Associates, P.C.
1140 19th St. NW, Suite 602
Washington, DC 20036

Steven H. Levin
LEVIN & CURLETT LLC
250 West Pratt Street, Suite 1300
Baltimore MD 21201

_____//signed//_____
Adam K. Ake
Assistant United States Attorney

15