## ATTACHMENT A
## STATEMENT OF FACTS: RACHEL ONDRIK

*The United States and the Defendant agree that if this case proceeded to trial, the United States would prove the following facts below beyond a reasonable doubt. The parties agree that these are not all of the facts that would have been proved if this case proceeded to trial.*

Defendant **RACHEL ONDRIK ("ONDRIK")** was a Special Agent of the United States Department of Commerce ("DOC"), Office of the Inspector General ("OIG"), from July 2001 through February 2013. In this role, she was covered by the United States Office of Personnel Management's series 1811, which sets forth requirements for positions that supervise, lead, or perform work involving the planning, conducting, or managing of investigations related to violations of federal criminal laws. Work in this series requires knowledge of criminal investigative techniques, rules of criminal procedures, laws, and precedent court decisions concerning the admissibility of evidence, constitutional rights, search and seizure, and related issues in the conduct of investigations.

**ONDRIK**'s first duty station was in Washington, D.C. In 2007, she transferred to Georgia, as a field agent. In 2009, she returned to Washington, D.C. where she continued to work for DOC OIG. During and after this change of station from Georgia to Washington, D.C., **ONDRIK** submitted false writings and made material misrepresentations to the DOC regarding payments for travel expenses, time, and attendance.

OIG had a telework policy in effect from September 2008 through May 2011, and a new policy beginning in June 2011. In both cases, **ONDRIK** was permitted to telework if she received advance written approval from her supervisor. Pursuant to the policy and agreements, **ONDRIK** was permitted to telework from her house, provided her residence qualified. In the June 2011 agreement, **ONDRIK** had to provide specific information about her residence in order to telework from there. **ONDRIK** listed her residence, and only her residence, on the agreement. In order to telework from a location other than her pre-approved residence, **ONDRIK** was required to seek and obtain prior written authorization to telework from a specific location. **ONDRIK** never sought permission to telework from anywhere other than her pre-approved residence. Furthermore, **ONDRIK** was under an "episodic" policy that required permission to telework for each "episode," requiring not only approval to telework on each episode but also additional information about the location if it was not her pre-approved residence. **ONDRIK** never sought or obtained permission to telework from a location other than her pre-approved residence.

On February 25, 2011, **ONDRIK** knowingly certified her time and attendance record and submitted it to the DOC OIG and the National Institute of Standards and Technology Office of Financial Resource Management in Gaithersburg, Maryland, which processed DOC OIG's financial claims. In that submission, **ONDRIK** falsely certified that she had been in a duty status during the entire covered 9-day work period, when in fact she had obtained travel orders to New York City on spurious grounds and worked only a fraction of one day between February 22 and 25, 2011.

Further, **ONDRIK** falsely stated on several other occasions via bi-weekly Time and Allowance certifications that she had been working when, in fact, she had not been and had no permission to telework from locations other than her residence. Based on contemporaneous records and emails, **ONDRIK** claimed to have been working on the following dates when, in fact, she was not:

March 17, 2010;
April 26, 2010;
June 21-24, 2010;
June 28, 2010;
September 15-17, 2010;
September 23, 2010;
November 8-9, 2010;
November 19, 2010;
December 22, 2010;
February 8-11, 2011;
March 24, 2011;
April 4-5, 2011;
May 4, 2011;
June 27, 2011;
July 13-14, 2011;
November 17, 2011;
February 14-17, 2012;
February 23-27, 2012;
June 20-22, 2012

On these dates, **ONDRIK** was neither at her home nor in another pre-approved location. **ONDRIK**'s position as an investigative special agent with significant discretion and relatively low direct supervision of her day-to-day activities made the detection of this offense more difficult. The actual loss to the United States that was the direct and proximate result of **ONDRIK**'s conduct was $9,598.66.

I have read this statement of facts, and have carefully reviewed it with my attorney. I acknowledge that it is true and correct.

13 May 2014
Date

Rachel Ondrik

I am Rachel Ondrik's attorney. I have carefully reviewed the statement of facts with him.

13 May 2014
Date

Andrew C. White, Esq.

9